No. 24-3068

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

**LUIS EMILIO CORDON LINAREZ,**
**Plaintiff-Appellant,**

v.

**ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,** *et al.,*
**Defendants-Appellees.**

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA
## CIVIL ACTION NO.: 24-cv-00488

---

## APPELLEES' ANSWERING BRIEF

---

YAAKOV ROTH
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

BRIAN C. WARD
Acting Assistant Director

Caroline McGuire
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4268
Email: caroline.mcguire@usdoj.gov
*Counsel for Appellees*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................ 1

STATEMENT OF JURISDICTION .................................................. 4

COUNTER-STATEMENT OF THE ISSUES .................................... 4

STATEMENT OF RELATED CASES AND PROCEEDINGS ........... 5

STATEMENT OF THE CASE ........................................................... 5

   I.  Statutory Background of Expedited Removal ............................. 5

   II.  Factual Background ................................................................. 8

   III. Procedural Background ........................................................... 9

STANDARD OF REVIEW .............................................................. 11

SUMMARY OF THE ARGUMENT ................................................ 12

ARGUMENT ................................................................................... 16

   I.  Appellant's Appeal is Moot ..................................................... 16

       A.  Appellant's Appeal is Moot. He Was Released From Custody And Removed to Guatemala After District Court Litigation Concluded. ................................................................................. 16

   II.  Even If The Court Finds Linarez's Petition is Not Moot, This Court Should Affirm The District Court's Finding That 8 U.S.C. §§ 1252(a)(2)(A) and (e)(2) Preclude The Court From Reviewing Appellant's Claim. ............. 26

   a.  8 U.S.C. § 1252(g) Bars Judicial Review .................................. 30

   b.  8 U.S.C. § 1252(a)(2)(A) Bars Review of Plaintiffs' Claim Under The Guatemala United States Extradition Treaty ........................... 37

   III. The Court Should Decline to Entertain Appellant's Remaining Attempts to Circumvent the Judicial Review Bar ....................................... 39

i

a.  The Suspension Clause Does Not Permit Judicial Review. ........................ 40

b.  The Equal Protection Clause Does Not Permit Judicial Review. .............. 44

CONCLUSION ................................................................................................. 47

# TABLE OF AUTHORITIES

## Cases

*Abdul-Akbar v. McKelvie,*
  239 F.3d 307 (3d Cir. 2001) ............................................................. 46

*Abreu v. Smithfield SCI,*
  971 F.3d 403 (3d Cir. 2020) ................................................ 21, 24, 25

*Akhtar v. Dir. United States Citizenship & Immigr. Servs. Mt. Laurel Field Off.,*
  No. 23-1577, 2024 WL 1427634 (3d Cir. Apr. 3, 2024) ................................... 8

*Bonhometre v. Gonzales,*
  414 F.3d 442 (3d Cir. 2005) ............................................................. 32

*Boumediene v. Bush,*
  553 U.S. 723 (2008) ................................................................. 40, 41

*Bullard v. Scism,*
  449 F. App'x. 232 (3d. Cir. 2011) ................................................... 11, 12

*Burkey v. Marberry,*
  556 F.3d 142 (3d Cir. 2009) ............................................................. 17

*Castro v. United States Department of Homeland Security,*
  835 F.3d 422 (3d Cir. 2016) .........................................................*passim*

*Castro v. United States Dep't Homeland Sec.,*
  163 F. Supp. 3d 157 (E.D. Pa. 2016) .................................................... 37

*Con, Inc. v. City of Philadelphia,*
  120 F.4th 346 (3d Cir. 2024) ........................................................... 23

*DeFoy v. McCullough,*
  393 F.3d 439 (3d Cir. 2005) ............................................................. 16

*Delgado-Sobalvarro v. AG of the United States,*
  625 F.3d 782 (3d Cir. 2010) ............................................................. 30

*Demore v. Hyung Joon Kim,*
538 U.S. 510 (2003) ...................................................................... 38

*Dep't of State v. Muñoz,*
602 U.S. 899 (2024) ........................................................................ 5

*Diaz v. Duckworth,*
143 F.3d 345 (7th Cir. 1998) ........................................................ 21

*Dobbs v. Jackson Women's Health Org.,*
597 U.S. 215 (2022) ................................................................ 17, 18

*E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.,*
950 F.3d 177 (3d Cir. 2020) ......................................................... 37

*Eskridge v. Phila. Hous. Auth.,*
722 F. App'x. 296 (3d. Cir. 2018)................................................. 45

*Garcia v. AG of the United States,*
553 F.3d 724 (3d Cir. 2009) ......................................................... 36

*Gregorio-Chacon v. Lynch,*
No. CV-16-2768, 2016 WL 6208264 (D.N.J. Oct. 24, 2016)........... 8

*Haaland v. Brackeen,*
599 U.S. 255 (2023) ................................................................ 13, 24

*Hector G.M. v. Warden Elizabeth Detention Center,*
2021 WL 5320854 (3d Cir. 2021) ................................................. 33

*Honig v. Doe,*
484 U.S. 305 (1988) ...................................................................... 20

*I.M. v. U.S. CBP,*
No. 20-CV-3576, 2022 WL 266703 (D.D.C. Jan. 28, 2022) ............ 7

*I.M. v. United States Customs & Border Prot.,*
67 F.4th 436 (D.C. Cir. 2023) ...................................................... 23

*I.N.S. v. St. Cyr,*
 533 U.S. 289 (2001) ...................................................................... 40

*Jennings v. Rodriguez,*
 583 U.S. 281 (2018) ...................................................................... 33

*Jimenez v. Baker,*
 135 Nev. 667 (Nev. App. 2019) .................................................... 46

*Joshua A. v. Rocklin Unified Sch. Dist.,*
 559 F.3d 1036 (9th Cir. 2009) ...................................................... 20

*Kumarasamy v. AG of the United States,*
 453 F.3d 169 (3d Cir. 2006) .......................................................... 25

*Landon v. Plasencia,*
 459 U.S. 21 (1982) .................................................................. 43, 44

*Matter of Badalamenti,*
 19 I. & N. Dec. ............................................................................... 39

*Matter of Valenzuela-Felix,*
 26 I. & N. Dec. 53 (BIA 2012) ...................................................... 39

*Miranda v. Reno,*
 238 F.3d 1156 (9th Cir. 2001) ...................................................... 26

*Nasrallah v. Barr,*
 590 U.S. 573 (2020) .............................................................. 15, 40

*Oliveira v. Twp. of Irvington,*
 41 F. App'x. 555 (3d Cir. 2002) .................................................... 45

*O'Shea v. Littleton,*
 414 U.S. 488 (1974) .............................................................. 19, 21

*Perez v. Greiner,*
 296 F.3d 123 (2d Cir. 2002) .......................................................... 21

*Plyler v. Doe*,
  457 U.S. 202 (1982) ........................................................... 45

*Powell v. Hanson*,
  No. 4:15-CV-408, 2016 WL 7492470 (N.D. Ohio Dec. 30, 2016) ................ 25

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ........................................................ 32

*Roe v. Wade*,
  410 U.S. 113 (1973) ..................................................... 17, 18

*S. Pac. Terminal Co. v. ICC*,
  219 U.S. 498 (1911) ........................................................ 22

*Simko v. U.S. Steel Corp*,
  992 F.3d 198 (3d Cir. 2021) ................................................ 22

*Soto-Ramirez v. Ashcroft*,
  228 F. Supp. 2d 566 (M.D. Pa. 2002) ..................................... 15, 43

*Tazu v. AG United States*,
  975 F.3d 292 (3d Cir. 2020) ...........................................*passim*

*DHS v. Thuraissigiam*,
  591 U.S. 103 (2020) ...................................................*passim*

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ......................................................... 5

*Turner v. Rogers*,
  564 U.S. 431 (2011) ..................................................... 19, 22

*U.S. ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950) ........................................................ 5

*Union Pac. R.R. v. Greentree Transp. Trucking Co.*,
  293 F.3d 120 (3d Cir. 2002) ................................................ 22

*United States v. Lopez*,
  650 F.3d 952 (3d Cir. 2011) ............................................................ 45

*United States v. Sanchez-Gomez*,
  584 U.S. 381 (2018) ............................................................... *passim*

*United States v. Texas*,
  599 U.S. 670 (2023) ............................................................ 13, 24

*Vasquez v. Aviles*,
  639 F. App'x. 898 (3d Cir. 2016) ............................................ 25, 33

*Verde-Rodriguez v. Att'y Gen. U.S.*,
  734 F.3d 198 (3d Cir. 2013) ............................................................ 32

*Williams v. Nish*,
  612 F. App'x. 81 (3d Cir. 2015) ............................................ 15, 44

*Wyatt v. Jacquez*,
  No. 3:24-CV-00269-JE, 2024 WL 4453648 (D. Or. Aug. 14, 2024) ............. 46

*Zambelli Fireworks Mfg. Co. v. Wood*,
  592 F.3d 412 (3d Cir. 2010) ............................................................ 24

*Zengkui Li v. AG United States*,
  836 F. App'x. 115 (3d Cir. 2021) ............................................................ 16

*Zurab Buziashvili, v. Immigration And Customs Enforcement Agency, et al.*,
  No. 3:21-CV-776, 2021 WL 4810345 (M.D. Pa. Sept. 23, 2021) ............. 17

**Statutes**

8 U.S.C. § 1158 ............................................................ 6

8 U.S.C. § 1182 ............................................................ 8

8 U.S.C. § 1182(d)(5)(A) ............................................................ 29

8 U.S.C. § 1229(a) ............................................................ 7

8 U.S.C. § 1252.................................................................36, 37, 41

8 U.S.C. § 1252(a)(5).................................................................32

8 U.S.C. § 1225(b)(1).............................................................*passim*

8 U.S.C. § 1252(b)(1)(A).................................................................29

8 U.S.C. § 1252(a)(2)(A).........................................................*passim*

8 U.S.C. § 1252(b)(9).................................................................32, 35

8 U.S.C. § 1252(e).............................................................*passim*

8 U.S.C. § 1252(e)(1)(A)...............................................................1, 34

8 U.S.C. § 1252(e)(2).........................................................*passim*

8 U.S.C. § 1252(e)(3).................................................26, 29, 30, 31

8 U.S.C. § 1252(g).............................................................*passim*

8 U.S.C. § 1256(a).................................................................36

8 U.S.C.S. § 235(b)(1).................................................................27

18 U.S.C. § 3632(d)(4)(A).................................................................9

18 U.S.C. § 3632(d)(4)(C).................................................................9

18 U.S.C. § 3632(d)(4)(E).................................................................10

21 U.S.C. § 963.................................................................1, 8, 24

21 U.S.C.S. § 812(c).................................................................2, 20

28 U.S.C. § 2241.................................................................9, 11

28 U.S.C. § 1291.................................................................4

## Rules

Fᴇᴅ. R. Cɪᴠ. P. 8(a)(3) ...................................................................... 22

Fᴇᴅ. R. Cɪᴠ. P. 12(h)(3) .................................................................... 24

## Regulations

8 C.F.R. § 208.30(f) .......................................................................... 7

8 C.F.R. § 212.5(e)(1)(ii) .................................................................. 30

8 C.F.R. § 208.30(e)(2) ...................................................................... 6

## Other Authorities

H.R. Conf. Rep. No. 109-72 ............................................................. 32

# **INTRODUCTION**

This Court should affirm the district court's denial of Mr. Cordón Linarez's, habeas corpus petition. After being extradited to the United States for his criminal prosecution and pleading guilty to drug trafficking, United States Immigration and Customs Enforcement (ICE) issued Linarez an expedited removal order under 8 U.S.C. § 1225(b)(1)(A)(1). Subsequently, he filed a habeas corpus petition, and raised a number of collateral challenges to his expedited removal order. However, as the district court adopted, 8 U.S.C. § 1252(a)(2)(A), titled "Review relating to section 1225(b)(1)," provides that "no court shall have jurisdiction to review" any cause or claim arising from or related to an expedited removal order, "[n]otwithstanding any other provision of law" including "habeas corpus" unless jurisdiction is expressly provided by 8 U.S.C. § 1252(e). A-10. *See* 8 U.S.C. § 1252(e)(1)(A). Thus, the district court correctly denied Linarez's habeas petition. Specifically, because his claims are not within the categories of challenges permitted to an expedited removal order through habeas corpus proceedings under 8 U.S.C. § 1252(e)(2). This Court should affirm that decision.

And even if the Court finds that judicial review is not precluded by 8 U.S.C. § 1252(a)(2)(A), this matter is moot. Linarez was extradited from Guatemala into the United States, pled guilty to conspiracy to traffic cocaine in violation of 21 U.S.C. § 963, and served his sentence in federal prison. A-51. On November 13,

2024, Appellant was removed to Guatemala. *See* Opening Brief ("Br.") 4. His removal erects an additional obstacle to his quest for judicial review. Since he is no longer in custody in the United States, his case is moot. Relatedly, habeas jurisdiction only exists while the individual is in custody. *DHS v. Thuraissigiam*, 591 U.S. 103, 118 (2020). So contrary to his contention that his alleged plight is "capable of repetition yet evading review," it is not. Linarez filed a habeas petition, and the district court ruled on that petition before he was removed, foreclosing any argument that his claims "evaded" review. Nor does he provide any basis to conclude that he is likely to be re-detained now that he is no longer in the United States. Appellant's guilty plea renders him an inadmissible alien under 8 U.S.C. § 1182(a)(2)(C)(i)(II) because he was convicted of a crime relating to a controlled substance. *Accord* 21 U.S.C.S. § 812(c) (listing cocaine is a schedule II drug). Thus, any future habeas corpus petition from Appellant would be based on an illegal re-entry. The Supreme Court has announced that this mootness exception does not extend to anticipated illegality. *United States v. Sanchez-Gomez*, 584 U.S. 381 (2018).

And mootness aside, Congress has foreclosed judicial review under 8 U.S.C. § 1252(a)(2)(A). Here, Appellant challenged his detention, by arguing that "but for" his alleged erroneous expedited removal order, his First Step Act time credits would have applied, resulting in an earlier release. *See* n.4, *infra*. The District Court

dismissed Appellant's challenge to his expedited removal order because Congress strictly limited such challenges via habeas petitions to the three distinct grounds enumerated in 8 U.S.C. § 1252(e)(2), and Linarez's challenge did not fall into any of these categories. *See Castro v. United States Department of Homeland Security*, 835 F.3d 422 (3d Cir. 2016).

Linarez also attacked his expedited removal order under the Guatemala United States Extradition Treaty, the Suspension Clause and the Equal Protection Clause. The District Court held[1] that each of these challengeswere similarly barred by 8 U.S.C. § 1252(e)(2). This decision is firmly rooted in binding Supreme Court and Third Circuit precedent, and is thus not a candidate for reversal by this Court. *DHS v. Thuraissigiam*, 591 U.S. 103 (2020); *Castro*, 835 F.3d 422. The district court also correctly held that 8 U.S.C. § 1252(g), a jurisdiction stripping provision for habeas petitions like the one Linarez lodged here, bars review of any decision to issue him an expedited removal order. A-12-13. That is because Appellant's main question, underlying all of these attempted end runs around 8 U.S.C. § 1252(e)(2)— is whether the expedited removal order was correctly issued to him. But Congress has announced, through 8 U.S.C. § 1252(e)(2), that the Court lacks review of that question.

---

[1] The district court did not address the Equal Protection Claim in its decision.

Thus, the Court should affirm the district court's denial of Linarez's habeas petition because it correctly held that his collateral challenges to his expedited removal order were subject to statutory jurisdictional bars and because his habeas claim is moot now that he is no longer in custody.

## **STATEMENT OF JURISDICTION**

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291, 1331, 2253(a).

## **COUNTER-STATEMENT OF THE ISSUES**

1. Whether Appellant's habeas corpus petition is now moot due to his release from custody on November 13, 2024.

2. Whether the District Court correctly determined 8 U.S.C. § 1252(e)(2) precluded judicial review of Appellant's expedited removal order, including challenges to that order related to the First Step Act and the United States-Guatemala Extradition Treaty.

3. Whether the District Court correctly determined that judicial review of the expedited removal order is barred under 8 U.S.C. § 1252(g).

4. Whether the District Court correctly determined that Linarez cannot invoke the Suspension Clause and/or the United States-Guatemala Extradition Treaty to challenge his expedited removal order?

5. Whether Linarez waived his Equal Protection Clause challenge.

6. Whether, in the alternative, 8 U.S.C. § 1252(e)(2) forecloses judicial review of the expedited removal order under the Equal Protection Clause, or whether Appellant states a claim upon which relief can be granted under the Equal Protection Clause.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

In accordance with L.A.R. 28.1(a)(2) and 28.2, Appellees confirm this matter has not previously been before this Court, and Appellees are unaware of any other case or proceeding that is in any way related, completed, pending or about to be presented before this court or agency, state or federal.

## STATEMENT OF THE CASE

### I.     Statutory Background of Expedited Removal

"For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 907 (2024) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)). "Whatever the rule may be concerning deportation of persons who have gained entry into the United States, it is not within the province of any court, *unless expressly authorized by law*, to review the determination of the political branch of the Government to exclude a given alien." *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) (emphasis added).

Exercising this plenary authority, Congress authorized the Department of Homeland Security (DHS) to summarily remove certain aliens who arrive at ports of entry or who recently entered the country from the United States. *See* 8 U.S.C. § 1225(b)(1). Under this summary-removal mechanism—known as expedited removal—an alien "who is arriving in the United States," who an immigration officer determines lacks valid entry documentation or makes material misrepresentations, shall be "order[ed] … removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution."[2] 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7); *accord DHS v. Thuraissigiam*, 591 U.S. 103, 109–13 (2020) (discussing expedited removal). Noncitizens that articulate either an asylum claim, or a fear of persecution are referred to an interview with an asylum officer; there, the officer will assess whether the noncitizen has a "credible fear of persecution," 8 U.S.C. § 1225(b)(1)(B)(ii), (v), and/or a credible fear of torture. 8 C.F.R. §§ 208.30(e)(2), 235.3. If the officer makes an affirmative

---

[2] Congress also delegated authority to the Executive Branch to apply expedited removal to additional persons. Specifically, the Homeland Security Secretary "may … designate[]" certain classes of inadmissible, unlawfully present aliens who have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" as subject to expedited removal, and that designation "shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time." 8 U.S.C. § 1225(b)(1)(A)(iii).

finding on either of these scores, they generally refer the noncitizen to 8 U.S.C. § 1229(a) removal proceedings. *Id.* § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). Section 1229(a) removal proceedings provide more procedure than expedited removal, *compare* 8 U.S.C. § 1229(a) *with id.* § 1225(b)(1), including a right to appeal to the Board of Immigration Appeals ("Board") and petition for review by a federal appellate court. *Id.* § 1252(a)(1).

Section 1252(a)(2)(A), entitled "Matters not subject to judicial review," provides that "[n]otwithstanding any other provision of law … no court shall have jurisdiction to review … except as provided in subsection (e)," "a decision … to invoke the provisions of such section," or "procedures and policies adopted … to implement" section 1225(b)(1). 8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iv). Section 1252(a)(2)(A) thus removes from federal courts jurisdiction to review issues "relating to section 1225(b)(1)," such as expedited removal proceedings or credible fear determinations, other than as explicitly permitted by section 1252(e). *I.M. v. U.S. CBP*, No. 20-CV-3576, 2022 WL 266703, at *4 (D.D.C. Jan. 28, 2022), *aff'd sub nom.*, 67 F.4th 436 (D.C. Cir. 2023).

Section 1252(e)(2) restores the jurisdiction that section 1252(a)(2)(A) divests. This provision governs the limited circumstances in which a Court may review a noncitizen's habeas corpus petition challenging an expedited removal order, which only exists to determine, "(A) whether the petitioner is an alien, (B) whether the

petitioner was ordered removed under [§ 1225(b)], and (C) …" "whether the petitioner is in fact an alien lawfully admitted for permanent residence, as a refugee or as an asylee." A-20. Similarly, section 1252(e)(3) permits judicial review for challenges on the validity of the system. Jurisdiction for such challenges is exclusive to the District Court of the District of Columbia, and limited to challenges about whether a regulation is constitutional, or within the Attorney General's authority. 8 U.S.C. § 1252(e)(3)(A)(i), (ii). Such lawsuits must be brought within sixty days after implementation of the challenged law. *Id.* § 1252(e)(3)(B); *Castro*, 835 F.3d at 427.

## II.    Factual Background

Appellant Mr. Cordón Linarez is a Guatemalan national. A-4. On December 15, 2020, he was extradited from Guatemala to the United States to face charges for conspiracy to distribute cocaine, in violation of 21 U.S.C. § 963. *Id;* A-183. Appellant was paroled[3] into the United States to face prosecution, and on May 10, 2021, Appellant pled guilty to this charge. A-17, 51. While serving his sentence, on

---

[3] Parole "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182 (d)(5)(A). "A 'paroled' [noncitizen] is one who is temporarily permitted to remain in the United States pending a decision regarding his application for admission." *Akhtar v. Dir. United States Citizenship & Immigr. Servs. Mt. Laurel Field Off.*, No. 23-1577, 2024 WL 1427634, at *2 (3d Cir. Apr. 3, 2024) (citation omitted). Thus, a paroled noncitizen is "not deemed admitted into the United States … and is instead still considered to be standing at the border for all legal purposes." *Gregorio-Chacon v. Lynch*, No. CV-16-2768, 2016 WL 6208264, at *2 (D.N.J. Oct. 24, 2016).

August 7, 2023, ICE encountered Linarez, interviewed him, and determined probable cause existed to remove him from the United States. A-197. Subsequently, the Department of Homeland Security served an expedited removal order on Appellant. A-52. On November 1, 2024, Appellant was released from custody, and on November 13, 2024, he was removed to Guatemala, pursuant to an expedited removal order. Br. 4. Upon information and belief, Appellant remains outside the United States.

## III. Procedural Background

On March 20, 2024, Appellant filed a habeas corpus petition under 28 U.S.C. § 2241 in the United States District Court for the Middle District of Pennsylvania. A-42. Therein, Appellant requested that the District Court, "Issue a writ of habeas corpus ordering Respondents to release the Petitioner and allow him to depart the United States voluntarily." A-70 ("Prayer for Relief"). Appellant argued that the Government lacked the authority to issue him an expedited removal order, and that absent this order, his custody release date would be accelerated once First Step Act ("FSA")[4] time credits were applied. A-60-64. Linarez challenged his expedited

---

[4] The FSA provides eligible inmates the opportunity to earn 10 or 15 days of time credits ("TC") for every 30 days of successful participation in evidence-based recidivism reduction programs or productive activities. 18 U.S.C. § 3632(d)(4)(A). These FSA TCs can be applied toward earlier placement in pre-release custody, such as Residential Reentry Centers and home confinement, or toward a term of supervised release. 18 U.S.C. § 3632(d)(4)(C). Certain offender categories, however, are excluded from FSA TC eligibility, including those inmates who are "the subject

removal order under the Suspension Clause, United States Guatemala Extradition Treaty, and the Equal Protection Clause. A-51-70. Appellees opposed the petition, arguing that the 8 U.S.C. §§ 1252(e) and (g) foreclosed judicial review of the matter. A-149-176.

The Court agreed with the Government and the District Judge adopted the Magistrate Judge's Report and Recommendation over Appellant's objections.[5] A-44-45. The Court determined that under section 1252(e), judicial review of a habeas petition challenging an expedited removal order was limited to three narrow categories: (1) whether Petitioner is in fact an alien; (2) whether the petitioner was in fact order removed under 8 U.S.C. § 1225(b)(1); and (3) whether the petitioner is in fact an alien lawfully admitted for permanent residence, as a refugee, or as an asylee. A-20. To that end, Mr. Cordón Linarez did "not ask th[e] Court to review *any* of these issues," resulting in the Court dismissing his habeas petition. A-22 (emphasis in original).

---

of a final order of removal under any provision of immigration laws." 18 U.S.C. § 3632(d)(4)(E). *See also* A-181 ¶¶ 6–7; A-477, n.4.

[5] Linarez objected, alleging the district court misapplied *Castro* and 8 U.S.C. § 1225(b)(1), that 8 U.S.C. § 1252(e) and the case law interpreting that provision was irrelevant, that the Court made incorrect determinations regarding how United States Guatemala Treaty affected Linarez's entry, and complained that his expedited removal was unlawful because the government lacked authority for it. A-609-19. Finally, Linarez highlighted that the "Court's delays" violated his constitutional rights. *Id.*

In so deciding, the Court noted that the genesis of Appellant's argument—that "but for" the expedited removal order, he would enjoy the benefit of FSA time credits, resulting in early release—was foreclosed from judicial review:

> "[I]t is well settled that district courts lack subject matter jurisdiction over the review of expedited removal orders. These clear and specific jurisdictional bars preserve habeas corpus review for only a small subset of issues relating to individual expedited removal orders, 8 U.S.C. § 1252(e), none of which apply in this case[] … ." A-4, *See also* A-24-38.

The Court held that 8 U.S.C. § 1252(e) remained a jurisdictional bar to Appellant's invocation of the Suspension Clause, *see* A-26-29, and the U.S.-Guatemala Extradition Treaty. A-29-30. The Court also held that 8 U.S.C. § 1252(g) barred his challenge to the decision to issue him an expedited removal order. *see* A-31-32. In so holding, the Court marshalled binding Supreme Court and Third Circuit precedent, which decidedly foreclosed further judicial review.

On November 1, 2024, Appellant timely filed a Notice of Appeal. A-1. After the District Court litigation concluded, Appellant completed his sentence on November 1, 2024, and was removed to Guatemala on November 13, 2024. Br. 4.

## STANDARD OF REVIEW

Appellate review of a habeas corpus petition under 28 U.S.C.S. § 2241 calls for "plenary review over the District Court's legal conclusions and [] a clearly erroneous standard to its factual findings." *Bullard v. Scism*, 449 F. App'x. 232, 234

(3d. Cir. 2011). This Court "may affirm on any grounds supported by the record." *Id.*

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's decision because Appellant fails to identify any error by the Court when it dismissed his habeas petition, and instead, simply rehashes the arguments he made below.

Since litigation in the District Court concluded, Mr. Cordón Linarez has been released from federal prison, and removed to Guatemala. Br. 4. Appellant tries to get ahead of this case-ending fact in his opening brief, by arguing his case is one that is "capable of repetition, yet evading review." Br. 25–27. That is false. First, because he received ample review, as evidenced by the record below. And second, now that Appellant is outside the United States he would also need to illegally re-enter this country to trigger this exact litigation posture: a habeas corpus petition challenging an expedited removal order. But the Supreme Court has declined to extend this mootness exception when "the [Appellant's] expected future misconduct [is] both illegal and within the [Appellant's] control." *United States v. Sanchez-Gomez*, 584 U.S. 381 (2018). Likewise there is no relief this Court can craft that would address Appellant's prayer for relief. Appellant began this litigation by lodging a habeas corpus petition for himself only. A-70. Since that filing, he received his requested relief when he was released from federal prison. Br. 4. Likewise, because he was

deported to Guatemala, *id.*, there is no judgment this Court can craft that memorializes the relief Appellant requested. *United States v. Texas*, 599 U.S. 670, 691 (2023). Nor is there any further relief that this Court can order. *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023).

If this Court concludes that Appellant has standing, it should nonetheless find that jurisdiction over Linarez's challenges is not permitted under 8 U.S.C. § 1252(e)(2), and affirm the District Court's finding that this provision precludes judicial review. Indeed, Congress has made clear that there is a presumption against judicial review of an expedited removal order, which this Court confirmed in *Castro v. United States Department of Homeland Security*, 835 F.3d 422 (3d Cir. 2016). And as the District Court correctly found, Appellant's case, including his claim linked to the United States Guatemala Extradition Treaty,[6] does not target any of the narrow categories that Congress dedicated to the Court's purview in 8 U.S.C. § 1252(e)(2). A-22-23. Recognizing this jurisdictional barrier, Appellant argues, as he unsuccessfully did in the court below, that judicial review is not precluded under 8 U.S.C. § 1252(g), and that he can viably challenge the expedited removal order

---

[6] Moreover, the District Court accurately disavowed Appellant's understanding that he should have thirty days to voluntarily depart the country after his release from federal custody, and this Court should do the same. Likewise, Appellant's misplaced reliance on the Board of Immigration Appeals cases does not support his position.

through either the Suspension Clause, and/or the Equal Protection Clause. But none of these authorities open the door to judicial review.

The District Court correctly held that 8 U.S.C. § 1252(g) bars judicial review. Specifically, that "the decision of the government to place Linarez in expedited removal proceedings is clearly a decision to '*commence proceedings*' against him," which is exactly the "type of action" the statute shields from the Court's view under this section. A-12-13. The lower court's interpretation is confirmed by this Court's decision in *Tazu v. AG United States*, 975 F.3d 292 (3d Cir. 2020), which held that, a petition for review, as opposed to a habeas petition, is the appropriate way to challenge any action taken or proceeding brought to remove the alien. To that end, Appellant has never filed a Petition for Review to challenge his expedited removal—his case stands on a habeas corpus petition. Thus, *Tazu* along with 8 U.S.C. § 1252(g) eliminates this option for relief. 975 F.3d at 294 ("In law, as in life, the path often matters as much as the destination. For an alien challenging his removal, that path begins with a petition for review of his removal order, not a habeas petition.").

*Second*, Appellant cannot seek shelter under the Suspension Clause. Habeas relief is an appropriate request when Appellant is detained, and requesting "simple release" from that detention. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 118 (2020). Here, Appellant *was* released from custody, and on November 13, 2024, he was removed to Guatemala. Br. 4. *Thuraissigiam*, 591 U.S. at 119 ("Claims

so far outside the 'core' of habeas may not be pursued through habeas."). Notwithstanding, the Suspension Clause was never a viable avenue for Appellant because he cannot even clear the first hurdle imposed by the two-step *Boumediene v. Bush* test as he is prohibited from invoking the Suspension Clause: "although [he is] physically well within the United States border, [he is] on the same legal footing as an immigrant at the door seeking admission to the United States.'" A-36 (quoting *Soto-Ramirez v. Ashcroft*, 228 F. Supp. 2d 566, 569–70 (M.D. Pa. 2002)). Moreover, 8 U.S.C. § 1252(e)(2) validly prohibits his access to the Suspension Clause. *See Nasrallah v. Barr*, 590 U.S. 573, 580–81 (2020). Finally, Appellant's attempt to distinguish himself from the litigants in *Thuraissigiam*, Br. 17, is foreclosed from review by 8 U.S.C. §§ 1252(a)(2)(A). Thus, this Court should affirm District Court's conclusions on this score.

*Fourth*, this Court should not entertain Appellant's Equal Protection Clause claim. This Count is yet another attempt to get the Court to peel back the layers of the expedited removal order to determine its validity. This theory is unworkable. As an initial matter, Appellant waived this claim by failing to raise it in his objections to the Magistrate's report and recommendation. *Williams v. Nish*, 612 F. App'x. 81, 82 (3d Cir. 2015) ("[A] party who fails to object before the district court to a magistrate judge's ruling on a non-dispositive pretrial matter waives that objection on appeal."). Notwithstanding, this claim falls short, both because of 8 U.S.C. §

1252(e)(2)'s jurisdictional bar, and because Appellant's previous paroled status renders him "an alien seeking initial admission to the United States [who] requests a privilege" and thus, "has no constitutional rights regarding his application." *Castro*, 835 F.3d at 445. Finally, Appellant fails to state a claim upon which relief can be granted. He does not allege he is part of a protected class, he fails to identify anyone in his pleadings similarly situated to him, and does not articulate that he was treated differently. Thus, his Equal Protection claim similarly disintegrates on the pleadings. As such, this Court should affirm the District Court and dismiss Appellant's appeal.

## ARGUMENT

### I.     Appellant's Appeal is Moot.

Appellant's release from custody and removal from this country renders his appeal moot. And there is no exception to mootness that applies here. Thus, the Court should deny Appellant's appeal.

### A. Appellant's Appeal is Moot. He Was Released From Custody And Removed to Guatemala After District Court Litigation Concluded.

On November 13, 2024, Linarez was removed to Guatemala. Br. 4. Therefore, Appellant's habeas corpus petition is moot because he has been released from custody. *Zengkui Li v. AG United States*, 836 F. App'x. 115, 116 (3d Cir. 2021) ("As a result, 'a petition for habeas corpus relief generally becomes moot when a prisoner is released from custody.'") (citing *DeFoy v. McCullough*, 393 F.3d 439, 441 (3d

Cir. 2005)); *see also Zurab Buziashvili, v. Immigration And Customs Enforcement Agency, et al.*, No. 3:21-CV-776, 2021 WL 4810345, at *1 (M.D. Pa. Sept. 23, 2021) ("Because Buziashvili has since been released on an order of supervision, the petition no longer presents an existing case or controversy.") (collecting Third Circuit cases holding the same). That is because Article III of the Constitution dictates that a federal court may adjudicate "only actual, ongoing cases or controversies." *Burkey v. Marberry*, 556 F.3d 142, 147 (3d Cir. 2009). Linarez's release in the face of his habeas petition negates that any "case or controversy" is "ongoing."

Understanding his release undermines this appeal, Mr. Cordón Linarez pre-emptively argues that his case is not moot, because his complaint is "capable of repetition, yet evading review." Br. 26. As a preliminary matter, his habeas corpus petition *was reviewed*, as evidenced by the District Court's decision, which forms the basis of this appeal. Moreover, this mootness exception applies when, although an injury may be presently extinguished, a high probability exists it will recur in the future, and the typical litigation timeline will dodge a remedy. *Roe v. Wade*, 410 U.S. 113, 125 (1973) (invoking the exception because "the normal 266-day human gestation period" will "come to term before the usual appellate process is complete.") *overruled on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). For example, the Supreme Court famously invoked this

exception in *Roe v. Wade*, as applied to once pregnant litigants. *Id.* at 125. The Court found that if a case became moot when a pregnancy concluded, "pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied." *Id.* Similarly, the Supreme Court and other Circuits employed the exception in challenges to a statutory ban that expires before litigation can conclude. 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE CIVIL § 101.99 (2024) (collecting cases). But the Supreme Court declined to implement the exception when "the Plaintiff's expected future misconduct was both illegal and within the Plaintiff's control." *Id.* (citing *United States v. Sanchez-Gomez*, 584 U.S. 381 (2018)).

In *United States v. Sanchez-Gomez*, the Court examined criminal defendants' challenge to wearing full restraints during criminal pretrial proceedings. 584 U.S. at 383. In their underlying criminal cases, the defendants pled guilty to felony importation of a controlled substance, felony misuse of a passport, and misdemeanor illegal entry into the United States, respectively. *Id.* at 384. Their guilty pleas terminated their pretrial proceedings and thus, rendered their restraint claims moot. *Id.* Notwithstanding, certain respondents[7] contended their claims triggered the mootness exception, "capable of repetition, yet evading review" … "because they

---

[7] These respondents were Sanchez-Gomez (felony misuse of passport) and Patricio-Guzman (misdemeanor illegal entry into the United States). *Id.* at 384.

will again violate the law, be apprehended, and be returned to pretrial custody." *Id.* at 391. The Supreme Court declined to enlarge this doctrine to "the possibility that a party 'will be prosecuted for violating valid criminal laws.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)). Instead, the Court "assume[d] that [litigants] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct." *Id.* (alteration in original) (collecting cases).

The *Sanchez-Gonzalez* Court distinguished two *civil* cases invoking the exception, one of which Appellant summons here (*Turner*). 584 U.S. at 392, 393 ("Our decisions in those civil cases rested on the litigants' inability, for reasons beyond their control, to prevent themselves from transgressing and avoid recurrence of the challenged conduct."). Br. 26. In *Turner v. Rogers*, an individual challenged the denial of appointed counsel in a civil contempt hearing. 564 U.S. 431, 439–40 (2011). Turner failed to pay child support. *Id.* Although he served his contempt penalty, thus shirking the need for appointed counsel, the Court found that Turner "was destined to find himself in *civil* contempt proceedings again" for three reasons. *Id.* (emphasis added). Specifically, he was "indigent," "over $13,000 in arrears," and his next hearing was in five months. *Sanchez-Gomez*, 584 U.S. at 392. He was repeatedly held in civil contempt in these circumstances, and the Court concluded that history was likely to repeat itself. *Id.* The Court similarly distinguished

19

*Honig* v. *Doe*, 484 U.S. 305, 320 (1988).[8] *Id.* There, the Court analyzed a disabled student's suspension from school for unruly behavior. *Id.* The Court determined that given the handicapped student's "inability to conform his conduct to socially acceptable norms" or "govern his aggressive, impulsive behavior," it was "reasonable to expect that [the student would] again engage in the type of misconduct that precipitated this suit" and "be subjected to the same unilateral school action for which he initially sought relief." *Id.* (quoting *Honig*, 484 U.S. at 320-321). However, the Court declined to apply the mootness exception to the *criminal* noncitizen offenders in *Sanchez-Gonzalez*. *Id.* at 393. ("Their personal incentives to return to the United States, plus the elevated rate of recidivism associated with illegal entry offenses, do not amount to an inability to obey the law.").

The *Sanchez-Gonzalez* holding and Appellant's guilty plea decidedly forecloses application of the mootness exception here. To be sure, 8 U.S.C. § 1182(a)(2)(C)(i)(II) deems non-citizens inadmissible to the United States when they, *inter alia*, are convicted of a crime relating to a controlled substance. *Accord* 21 U.S.C. § 812(c) (listing cocaine is a schedule II drug). Mr. Cordón Linarez's cocaine trafficking conviction falls squarely within this inadmissibility ground.

---

[8] Although this case was partially superseded in statute, the Supreme Court's mootness holding remains undisturbed. *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1039 n.1 (9th Cir. 2009).

Since Appellant is now an inadmissible alien located outside the country, he will not be subject to the United States criminal justice system, where another habeas corpus petition would be warranted. *See Perez v. Greiner*, 296 F.3d 123, 126 (2d Cir. 2002) (finding that a person who has been deported "need have no fear of running afoul of the American criminal justice system unless he renters the United States without the express permission of the Attorney General."); *Diaz v. Duckworth*, 143 F.3d 345, 347 (7th Cir. 1998) (same). Linarez's argument against mootness implies that he would illegally reenter the country, be detained due to his illegal entry and/or other criminal conduct, thus triggering another habeas petition and/or expedited removal order. But the *Sanchez-Gonzalez* holding does not allow this Court to find jurisdiction when the forecasted "conduct capable of repetition" is criminal and avoidable. 584 U.S. at 393-94 ("We have consistently refused to find the case or controversy requirement satisfied where, as here, the litigants simply 'anticipate violating lawful criminal statutes.'") (quoting *O'Shea*, 414 U.S. at 496); *Abreu v. Smithfield SCI*, 971 F.3d 403, 408 (3d Cir. 2020) ("These are not valid collateral consequences: due to his federal conviction, Abreu's reentry to the United States would be a new crime … And collateral consequences that depend on an individual committing a crime cannot 'breathe life' into a mooted controversy.") (internal citation omitted).

For this reason, Appellants' reliance on *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911), to invoke the mootness exception is also unavailing. The *S. Pac Terminal Co.* Court employed this exception when a governmental order expired, but another was on the horizon as foreshadowed by past practice. 219 U.S. at 514. Here, Appellant's inadmissible status confirms that once his expedited removal order was fulfilled, another will not issue. And unlike the threat of continued detention in *Turner*, 564 U.S. at 439–40, Linarez's inadmissibility designation ensures he will not be re-detained stateside.

Linarez purports his "injury" could occur to "others in similar circumstances." Br. 27. However, Appellant's operative pleading only requested that *he* be released from custody. A-64. Appellant has never articulated an alternate harm theory on behalf of others, and it would be improper to do so for the first time on appeal.[9] *Id*; *Union Pac. R.R. v. Greentree Transp. Trucking Co.*, 293 F.3d 120, 126 (3d Cir. 2002) ("Nor can they advance new theories or raise new issues in order to secure a reversal of the lower court's determination."). When a statutory scheme

---

[9] Tangentially, Appellees have never defended against this new injury theory, because it was never articulated in the pleadings below, and thus not preserved for appeal. FED. R. CIV. P. 8(a)(3)("A pleading that states a claim for relief *must* contain:"…"a demand for the relief sought, which may include relief in the alternative or different types of relief.") (emphasis added); *Simko v. U.S. Steel Corp*, 992 F.3d 198, 205 (3d Cir. 2021) ("It is well-established that arguments raised for the first time on appeal are not properly preserved for appellate review.") (citations omitted).

differentiates between individual and systemic challenges, 8 U.S.C. § 1252(e)(2), (3), "capable of repetition" should not be broadened to encompass "others." And despite Appellant's complaint that the "rapid timeline" of expedited removal proceedings "often results in detainees being removed before" concluding litigation, Br. 26, this fast-paced case chronology is only reaffirmed by Congress's presumption against judicial review for habeas petitions challenging expedited removal, as explained in Section I (Statutory Background of Expedited Removal), *infra*. 8 U.S.C. § 1252(e)(2).

Therefore, as the Prayer for Relief in the operative pleadings remains unchanged, and because no other "injury" to Appellant persists post-release, it is of no moment that "others" may be affected by expedited removal. Indeed, Linarez has no basis, much less standing, to raise a speculative injury theory never articulated in his habeas petition, and predicated on individuals not before this Court. *Rd.-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 355 (3d Cir. 2024). Appellant's removal renders his appeal moot. His inadmissibility status forecloses any future detention stateside, and thus, that he would lodge another habeas petition. It is thus an *im*possibility that the mootness exception Appellant invokes would apply to his situation. As such, this Court should discard this appeal. *I.M. v. United States Customs & Border Prot.*, 67 F.4th 436, 445 (D.C. Cir. 2023) ("An alien may seek judicial review of an expedited removal order in 'habeas corpus proceedings.' 8

U.S.C. § 1252(e)(2). And habeas corpus proceedings are available only to those in custody. IM was not in custody. So the district court lacked jurisdiction to consider his habeas petition. We thus affirm.").

Finally, there is no remedy this Court could grant Appellant to redress his claimed harms. Indeed, "[u]nder this Court's continuing obligation to assess its subject matter jurisdiction, we can dismiss a suit *sua sponte* for lack of subject matter jurisdiction at any stage[10] in the proceeding." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *see* FED. R. CIV. P. 12(h)(3). "A habeas petition does not continue to present a live controversy once the petitioner has been removed if the grounds for habeas relief will not redress the collateral consequences complained of by the petitioner." *Abreu v. Smithfield SCI*, 971 F.3d 403, 407 (3d Cir. 2020). The Court measures redressability it "by asking whether a court's judgment will remedy the plaintiff's harms." *United States v. Texas*, 599 U.S. 670, 691 (2023). Specifically, "[i]t is a federal court's *judgment*, not its *opinion*, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (emphasis added).

Importantly, Mr. Cordón Linarez pled guilty to conspiracy to distribute cocaine, in violation of 21 U.S.C. § 963. A-17, 51. He has never disputed the validity

---

[10] Appellant was released from custody, on November 13, 2024, Br. 4, after the conclusion of litigation in the District Court, on November 1, 2024. A-45.

of that conviction. And that conviction means he is permanently inadmissible to reenter this United States. *Abreu v. Smithfield SCI*, 971 F.3d 403, 407-08 (3d Cir. 2020) ("[T]he [habeas] relief he currently seeks will do nothing to change" his inadmissibility from reentry into the United States). Consequently, his release from custody, and subsequent removal to Guatemala renders redressability a legal impossibility here. To be sure, Appellant began this litigation by filing a habeas petition, challenging his expedited removal order, and requesting that the Court order his release him from custody. A-42, 70. But as Appellant now concedes, he was released from custody, and removed to Guatemala. *Compare* A-42 *with* Br. 4. Thus, there is no *judgment* this Court could craft that would address the relief Appellant requests. *Vasquez v. Aviles*, 639 F. App'x. 898, 902 (3d Cir. 2016); *See Powell v. Hanson*, No. 4:15-CV-408, 2016 WL 7492470, at \*2 (N.D. Ohio Dec. 30, 2016) ("Because Powell was released from federal custody, no actual injury remains concerning his release date that can be redressed by this Court.") (collecting cases). And Appellant never asked the Court for any alternate relief or amended his Prayer for Relief. Thus, there is no Order this Court could fashion that would afford Appellant the relief he seeks. His removal to Guatemala and permanent inadmissibility status confirms this impossibility. *See Kumarasamy v. AG of the United States*, 453 F.3d 169, 173 (3d Cir. 2006) ("As the Ninth Circuit explained in *Miranda*, '[n]o interpretation of § 2241 that is not utterly at war with its plain

language permits us to exercise habeas corpus jurisdiction' when the petitioner has already been removed from the country.") (citing *Miranda v. Reno*, 238 F.3d 1156, 1159 (9th Cir. 2001)). Thus, this Court should find that Appellant's habeas petition is moot. Even if this Court finds that Linarez's petition is not moot, his claim is barred by 8 U.S.C. §§ 1252(a)(2)(A) and (e)(2).

## II. Even If The Court Finds Linarez's Petition is Not Moot, This Court Should Affirm The District Court's Finding That 8 U.S.C. §§ 1252(a)(2)(A) and (e)(2) Preclude The Court From Reviewing Appellant's Claim.

This Court should affirm the District Court's conclusion that 8 U.S.C. §§ 1252(a)(2)(A), (e)(2) does not permit judicial review of Appellant's habeas challenge to his expedited removal Order. A-16–A-39.

Appellant contends that his paroled status exempts him from the expedited removal process, and that such an order was improperly issued to him. A-7, A-25. Appellant's continued advocacy of this stance is advanced without any legal footing.

8 U.S.C. § 1252(e) enshrines narrow parameters for judicial review of a challenge to an expedited removal order. As the District Court acknowledged:

> "expedited removal orders are subject to habeas review[11] in the district courts, but expressly limited to three

---

[11] Conversely, "challenges to the validity of the system" must be filed in the District of Columbia District Court. A-20. There, the Court's judicial review is "expressly limited to two enumerated issues: (1) whether the expedited removal statute, INA § 235(b)(1), 8 U.S.C. § 1225(b)(1), or any implementing regulation is constitutional; and (2) whether any implementing regulation, written policy directive, written policy guideline, or written procedure is inconsistent with federal immigration statutes or

enumerated issues: (1) whether the petitioner is in fact an alien; (2) whether the petitioner was in fact ordered removed under INA § 235(b)(1), 8 U.S.C. § 1225(b)(1); and (3) whether the petitioner is in fact an alien lawfully admitted for permanent residence, as a refugee, or as an asylee. 8 U.S.C. § 1252(e)(2)." A-20.

The Court agreed with the Government, that "Cordón Linarez 'does not ask this Court to review any of these issues.'" A-22, In so finding, the Court concluded that the petition was "constrained by insurmountable jurisdictional issues," and dismissed the petition for lack of subject matter jurisdiction. *Id.*

Taking a second bite at the apple, Linarez posits that the District Court did not "first determine[e] whether [8 U.S.C.S. § 235(b)(1)] applied to" him. Br. 15. Appellant claims that "[s]uch a question of statutory authority is beyond the jurisdictional bar imposed by § 1252(e)." *Id.* To be clear, it is not. The District Court has in fact spoken on this issue: "[T]his challenge asks the court to review the validity of the expedited removal order, which we simply lack jurisdiction to do." A-25. Section 1252(a)(2)(A) closes the door to judicial review of any expedited removal order, or any claim arising from the same.

Not only is Appellant's ask unsupported by legal authority, but it also runs headlong into this Court's precedent. In *Castro v. United States Department of*

_____

otherwise in violation of law." *Id.* (citing 8 U.S.C. § 1252(e)(3)). Linarez does not raise a challenge under § 1252(e)(3), nor could such a challenge be brought in this Court if he did. Br. 1; A-64.

*Homeland Security*, the Third Circuit found that 8 U.S.C. §§ 1252(a)(2)(A) and (e) stripped a district court of jurisdiction to review an expedited removal order outside of a narrow set of claims not presented here. 835 F.3d 422, 429-33 (3d Cir. 2016). There, petitioners were stopped shortly after illegally crossing the United States' border and filed habeas petitions to challenge portions of their expedited removal orders. *Id*. at 425. This Court found that 8 U.S.C. § 1252(e) "preserv[ed] judicial review for only a small subset of issues relating to individual expedited removal orders." *Id*. at 427. Thus, this Court applied the narrow exceptions in 8 U.S.C. 1252(e) to the petitioners' challenges; after finding none of their claims fit the exceptions, the Court affirmed the District Court's holding that it lacked jurisdiction. *Id*. at 429-34.

Appellant attempts to distinguish *Castro*, by arguing that the Government appropriately issued those petitioners an expedited removal order, because they had unlawfully crossed the border. Br. 9. Indeed, Appellant challenged the application of *Castro* in the District Court on the same grounds. A-24-25. However, Appellant elucidates a "distinction" that makes no difference. In *Castro*, the petitioners disputed their expedited removal orders because they "indicated a fear of persecution if returned to their native country." 835 F.3d at 425. An immigration judge later found "Petitioners' fear of persecution was found to be not credible, such that their expedited removal orders became administratively final." *Id.* Like Mr. Cordón

Linarez, the *Castro* petitioners invited the Court to examine whether the expedited removal order was appropriately issued, there, by challenging the immigration judge's credible fear determinations. *Id.* at 429–32. Here, Appellant does this by arguing that he does not fall within the "statutory framework" for expedited removal.[12] Br. 10. But this Court declined that identical invitation in *Castro*, finding Congress foreclosed examination under 8 U.S.C. § 1252(e)(2). *Id.* And here, the District Court accurately adopted the reasoning from *Castro* when determining that judicial review was precluded here. *Compare* A-10 ("However, as *Castro* makes clear, the only authority we possess to review *any* claim related to an expedited removal order exists under this statute.") (emphasis in original) *with* A-22 ("Judge Carlson then noted that Cordón Linarez 'does not ask this Court to review any of these issues.'") (emphasis in original).

---

[12] Even if the Court could consider Appellant's challenges to his expedited removal order, they are without merit. Linarez argues his order was improper (1) because he was paroled into the United States, (2) because he was in the country for more than 2 years. Br. 10. In making those arguments he relies on language in 8 U.S.C. § 1252(b)(1)(A)(iii)(II), which enumerates when expedited removal may be applied to "certain other aliens," who have not been admitted or paroled into the country, and have not affirmatively demonstrated their presence for more than two years. However, Appellant's expedited removal order was not issued under that provision. Instead, it was issued under 8 U.S.C. § 1252(b)(1)(A). A-91-92. This provision does not have a time limit and it applies to arriving aliens, which Appellant became once his parole ended. *See* 8 U.S.C. § 1182(d)(5)(A) (noting that when the purposes of parole have been served—here the criminal prosecution for which Linarez was extradited—a parolee shall be returned to the status he had prior to the parole and shall be dealt with in the same manner as any other applicant for admission to the United States).

The District Court also correctly dispelled Appellant's alleged "distinction" about whether his different admission circumstances,[13] contrasted against the *Castro* litigants, changed whether the Government appropriately issued him an expedited removal order. A-25. ("But this challenge asks the court to review the validity of the expedited removal order, which we simply lack jurisdiction to do."). Appellant fails to ask this Court for relief in any of the categories that Congress permitted judicial inquiry on. Thus, binding Third Circuit precedent confirms that 8 U.S.C. § 1252(e)(2) forecloses judicial review of Appellant's habeas petition.

### a. 8 U.S.C. § 1252(g) Bars Judicial Review.

Appellant continues his request for judicial review, this time claiming that 8 U.S.C. § 1252(g) does not ban court involvement. Br. 13. He posits that this section is inapplicable because, "[t]his case does not involve a challenge to the Attorney General's discretionary decisions to commence, adjudicate, or execute removal proceedings…" *Id.* Instead, it challenges the Attorney General's authority to

---

[13] To this end, Appellant claims, "This lawful parole categorically excludes him from the statutory class subject to expedited removal" citing *Delgado-Sobalvarro v. AG of the United States*, 625 F.3d 782, 788 (3d Cir. 2010) as authority for this proposition. Br. 11. However, *Delgado-Sobalvarro* examined whether a petitioner, who entered the United States illegally, was subsequently detained by immigration enforcement, and released on conditional parole, was eligible to adjust status through an I-130 petition after marrying a United States citizen. *Id.* at 784. But *Delgado-Sobalvarro* does not grapple with facts about a deported felon outside of the United States, and thus, does not impact this Court's holding in *Castro*, which controls in this case. Likewise, and importantly here, Linarez's parole ended once the purpose of his parole expired. 8 C.F.R. § 212.5(e)(1)(ii).

commence these proceedings. *Id.* Indeed, Appellant unsuccessfully advanced this same argument in the District Court. A-31. 8 U.S.C. § 1252(g) announces:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General *to commence proceedings*, adjudicate cases, or *execute removal orders* against any alien under this chapter. 8 U.S.C. § 1252(g) (emphasis added).

The District Court resolved that it could not look behind the curtain Congress had statutorily drawn with section 1252(g). Specifically, that "the decision of the government to place Linarez in expedited removal proceedings is clearly a decision to '*commence proceedings*' against him," which is exactly the "type of action" the statute shields from the Court's view under this section. A-12-13. The Court's interpretation is confirmed by this Court's decision in *Tazu v. AG United States*, 975 F.3d 292 (3d Cir. 2020).

In *Tazu*, this Court addressed how the scope of section 1252(g) impacted federal district court jurisdiction in removal challenges. 975 F.3d 296. There, Tazu filed a habeas corpus petition challenging his removal order and the timing of when that order was executed. *Id.* at 295–96. This Court rejected Tazu's habeas petition, finding that the proper way to challenge a removal order in the Court of Appeals was through a petition for review. *Id.* at 296-300. This Court explained that if a petitioner

31

challenged the Attorney General's action in one of the three specific categories listed in 8 U.S.C. § 1252(g), that section removed the district court's jurisdiction, and funneled review to the Court of Appeals. *Id.* at 296. That is because in passing the REAL ID Act, Congress prescribed a single path for judicial review of orders of removal: "a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5); *see also Verde-Rodriguez v. Att'y Gen. U.S.*, 734 F.3d 198, 201 (3d Cir. 2013). The REAL ID Act further provides that, "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added).

Read in conjunction with section 1252(b)(9), section 1252(a)(5) expresses Congress's intent to channel and consolidate judicial review of every aspect of removal proceedings into the petition-for-review process in the courts of appeals. H.R. Conf. Rep. No. 109-72, at 174-75; *see also Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (highlighting Congress's "clear intent to have all challenges to removal orders heard in a single forum (the courts of appeals)" as part of a petition for review); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) ("*AADC*") (labeling section 1252(b)(9) an "unmistakable zipper clause," and

defining a zipper clause as "[a] clause that says 'no judicial review in deportation cases unless this section provides judicial review.'"); *Vasquez v. Aviles*, 639 F. App'x 898, 900-01 (3d Cir. 2016); *accord Jennings v. Rodriguez*, 583 U.S. 281, 316–17 (2018) (suggesting that when an alien "challeng[es] the decision … to seek removal," section 1252(b)(9) presents a jurisdictional bar). This paradigm is confirmed by section 1252(e)(2), which outlines the narrow issues the Court may review when a litigant lodges a *habeas petition*, as Appellant has done here. Thus, this Court has since affirmed that habeas petitions challenging removal orders will be dismissed for lack of jurisdiction. *Hector G.M. v. Warden Elizabeth Detention Center*, 2021 WL 5320854, at *1 (3d Cir. 2021) ("Congress has jurisdictionally excluded habeas petitions as a means of challenging the execution of removal orders, so we will affirm the judgment of the District Court dismissing this case on jurisdictional grounds.").

Here, the record demonstrates Appellant's case theory is predicated on the notion that "but for" the expedited removal order, he would have been released early with the application of FSA time credits. Br. 8–12. Thus, Appellant argues that the expedited removal order was not properly issued to him because he was paroled into the United States to face his criminal drug trafficking prosecution. *Id.* But this Court's *Tazu* holding shutters Appellant's plea. 975 F.3d at 294 ("In law, as in life, the path often matters as much as the destination. For an alien challenging his

removal, that path begins with a petition for review of his removal order, not a habeas petition."). Any challenge to a removal order must be brought either under the narrow claims permitted by § 1252(e) or for a non-expedited removal order, through a Petition for Review with the Court of Appeals under § 1252(a)(5), neither of which Appellant has raised, or could raise, in this litigation. *Id.* And even if Appellant is correct that section 1252(g) does not apply, that conclusion would not sidestep 8 U.S.C. § 1252(a)(2)(A)'s sweeping jurisdictional bar: "no court shall have jurisdiction to review" any cause or claim arising from or related to an expedited removal order, "[n]otwithstanding any other provision of law" including "habeas corpus" unless jurisdiction is expressly provided by 8 U.S.C. § 1252(e) of "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," any "decision … to invoke the provisions of such section," and "procedures and policies" that implement section 1225(b)(1)(B). *See* 8 U.S.C. § 1252(e)(1)(A). Section § 1252(a)(2)(A) also bars any review of "the application of such section to individual aliens." 8 U.S.C. § 1252(a)(2)(A)(iii). Unlike the other sub-provisions of section 1252(a)(2)(A), sub-provision (III) lacks language indicating that review may be authorized the "in subsection (e)." Because this provision does not restore any review, it *completely* bars judicial review of

challenges to the application of the expedited removal provisions of section 1225(b)(1) to an individual alien.

As such, *Tazu* ensures that section 1252(g) fails to provide Appellant safe harbor. First, Linarez's position that this lawsuit challenges whether the expedited removal statute was correctly applied, versus the Attorney General's discretionary power is a "distinction" the District Court declined to entertain. Br. 13–14. This Court should affirm that conclusion. That is because "the Attorney General's discretionary decision to place Linarez in expedited removal proceedings is precisely the action [§ 1252(g)] refers to." A-11. Tazu similarly sought "to undermine [§ 1252(g)'s] design by styling his constitutional and statutory objections as challenging not the Executive's *discretion*, but its *authority* to execute his removal order." *Tazu*, 975 F.3d at 297 (emphasis in original). But by challenging the action taken to remove him to Guatemala through a habeas petition, Appellant invokes section 1252(g)'s jurisdictional bar in addition to the bars to review in § 1252(a)(2)(A). *Id.* at 299.

Second, Appellant attempts to distance himself from *Tazu* by misstating its holding. Br. 14. Specifically, he latches onto one line as salvos: "unless the Attorney General first has authority under the Immigration and Nationality Act to remove an alien, 8 U.S.C.S. § 1252(g) cannot shield the Attorney General's discretionary use of that authority." *Id.* (quoting *Tazu*, 975 F.3d at 294). However, as the *Tazu* Court

explained, the exception to the rule was borne out of a case where petitioner challenged the Attorney General's "*statutory* authority to commence those proceedings." *Tazu*, 975 F.3d at 298 (emphasis added) (citing *Garcia v. AG of the United States*, 553 F.3d 724 (3d Cir. 2009)).

In *Garcia*, a noncitizen achieved lawful permanent residence by claiming she derived citizenship from her "mother," a U.S. Citizen, who was in fact not her mother. *Garcia*, 553 F.3d at 726. When the Government uncovered this falsehood eight years later, it commenced removal proceedings. *Id.* The petitioner challenged the commencement of those proceedings under 8 U.S.C. § 1256(a), which permits the Government to rescind a status change and remove a noncitizen within five years. *Id.* The Court allowed this challenge to proceed, because allowing deportation to occur despite the statutory bar would "effectively read [§ 1256(a)] out of existence." *Id.* at 727. Thus, the Court acknowledged that 8 U.S.C. § 1256(a) posed a legitimate statute of limitations on removal proceedings. *Id.* The Court found that 8 U.S.C. § 1252(g) was not implicated because the Appellant was "not challenging the discretionary *decision* to commence proceedings, but is challenging the government's very *authority* to commence those proceedings after the limitation period has expired." *Id.* at 729 (emphasis in original). Dissimilarly here, Appellant does not point to a limit outside of 8 U.S.C. §§ 1252 (a)(2)(A), (e), (g)'s jurisdictional bars that would permit review of the removal order. Br. 13–14.

Likewise, his expedited removal order was firmly rooted in statutory authority, See n.12, *supra*. Finally, Appellant falsely contends that "The Third Circuit in *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177 (3d Cir. 2020), emphasized that § 1252(g) does not preclude judicial review when the challenge concerns the legal validity of the underlying statute or its application." Br. n.4. But this Court did no such thing in *E.O.H.C.*, which was decided under statutory provisions relevant to a petition for review, which Appellant never filed here. *E.O.H.C.*, 950 F.3d at 180 (citing 8 U.S.C. §§ 1252 (a)(4), (b)(9)). Here, Appellant seeks the Court's opinion on a subject matter that Congress has squarely usurped from its purview though 8 U.S.C.S. § 1252(g). Thus, this Court should affirm the District Court, and dismiss this appeal.

### b. 8 U.S.C. § 1252(a)(2)(A) Bars Review of Plaintiffs' Claim Under The Guatemala United States Extradition Treaty.

Mr. Cordón Linarez also seeks to circumvent the bar to judicial review by arguing that his removal violated the Guatemala United States Extradition Treaty. Br. 15–17. Appellant posits that the Government erred by treating him as a "recent border entrant" and not allowing him "the opportunity to voluntarily depart within 30 days after completing their sentence unless additional charges are filed." *Id.* But the District Court correctly rejected this very argument as a challenge to his expedited removal that was not permitted by section 1252(e)(2). A-29; *see also Castro v. United States Dep't Homeland Sec.*, 163 F. Supp. 3d 157, 173 (E.D. Pa.

2016), *aff'd* 835 F.3d 422 (3d Cir. 2016) (finding when aliens are placed in expedited removal and are subject to detention, that is a "constitutionally permissible aspect of the expedited removal process.") (citing *Demore v. Hyung Joon Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."). And Linarez has been convicted of drug trafficking, making him inadmissible to the United States under 8 U.S.C. § 1182(a)(2)(C)(i)(II). Thus, it defies all logic that Appellant would be released from federal prison, permitted to move freely within the interior, and then trusted to voluntarily exit the United States within thirty days, *despite* his inadmissible status. *Thuraissigiam*, 591 U.S. at 119 ("Without a change in status, he would remain subject to arrest, detention, and removal.") (citing 8 U.S.C.S. §§1226(a), 1229a(e)(2)).

Even if the Court could reach this claim, the District Court correctly explained why Appellant's interpretation is a misreading of the treaty. A-30, n.6. Specifically, that it does not "appear to confer upon an extradited person a free-standing right to be permitted to voluntarily return to his country of origin rather than be removed." *Id.* (collecting cases). But beyond that, the Court acknowledged that this challenge, again, summons the tribunal to review the validity of the removal order, which the Court "simply lack[s] the jurisdiction to do." A-30.

Moreover, Appellant's misplaced reliance on two Board of Immigration Appeals decisions also does not move the needle in this case. First, Appellant

contends that "DHS's reliance on [8 U.S.C. § 1225(b)(1)] to justify the expedited removal order conflicts with the legislative history and intent of [8 U.S.C. § 1182(d)(5)], which was designed to accommodate individuals brought to the United States for prosecution." Br. 16 (citing *Matter of Valenzuela-Felix*, 26 I. & N. Dec. 53, 56–57 (BIA 2012)). But *Matter of Valenzuela* articulated this point to reject the contention that only an applicant for admission, and not an individual extradited for prosecution, could be paroled. *Matter of Valenzuela-Felix*, 26 I. & N. Dec. at 56. The case says nothing about whether an individual who has been paroled can be placed in expedited removal proceedings. *Id.* Appellant relies on another Board of Immigration Appeals decision to dispute his status after his release from detention, and what departure procedures would be proper. Br. 16–17 (citing *Matter of Badalamenti*, 19 I. & N. Dec. at 624, 626, INA § 212(d)(5)). However, the case he points to does not arise under the Guatemala United States Extradition Treaty, and thus does not support Appellant's contention that he should have been allotted thirty days to voluntarily depart from the country. *Id.* Thus, the Guatemala United States Extradition Treaty does not provide Linarez with a claim even if he could somehow evade the barriers to judicial review.

## III. The Court Should Decline to Entertain Appellant's Remaining Attempts to Circumvent the Judicial Review Bar.

Appellant seeks to circumvent 8 U.S.C. §§ 1252(a)(2)(A) and (e)(2)'s jurisdictional bar by claiming that the Suspension Clause, and/or the Equal

Protection Clause does not bar judicial review. To be clear, Appellant manipulates these authorities to disguise his actual inquiry: whether the expedited removal order was properly issued to him. The District Court correctly determined that both 8 U.S.C. §§ 1252(a)(2)(A), (e)(2) forecloses review of this question, or that these authorities do not independently create an opportunity for judicial review.

### a. The Suspension Clause Does Not Permit Judicial Review.

The Suspension Clause does not fix Appellant's jurisdictional issues. Binding Supreme Court precedent confirms that. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020); *Boumediene v. Bush*, 553 U.S. 723 (2008); *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001). The District Court correctly applied this precedent in finding that the Suspension Clause does not create an avenue for judicial review here. A-26-28. The District Court acknowledged the Supreme Court's *St. Cyr* holding, which reaffirmed "that the common-law habeas writ 'provided a vehicle to challenge all manner of detention by government officials'" and "could be invoked by aliens already in the country who were held in custody pending deportation." A-26 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 137–38 (2020)). In response to this holding, Congress enacted the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, § 106, 119 Stat. 231, 302, 310–11, to confirm that District Courts may not review expedited removal orders, even via habeas corpus petitions, except for the three named issues identified in 8 U.S.C. § 1252(e)(2). *See Nasrallah v. Barr*,

590 U.S. 573, 580–81 (2020). To this end, the District Court found that Appellant's habeas claims are not within the three 8 U.S.C. § 1252(e)(2) categories granting federal district court habeas jurisdiction. A-27. Thus, the Court found "the petitioner's reliance on *St. Cyr* is unpersuasive," in light of Congress's clear statement to preclude this court from reaching farther in habeas jurisdiction with respect to expedited removal orders. *Id.* Indeed, *Thuraissigiam* was decided after *St. Cyr*, and rejected the argument that the Suspension Clause provides more review than Congress authorized. *Thuraissigiam*, 591 U.S. at 138.

The District Court also declined to find that *Boumediene v. Bush*, 553 U.S. 723 (2008) changed Appellant's destiny. A-28. The Court distinguished the case because there, the Guantanamo Bay prisoners sought release from the naval base, not entry into the United States. *Id.* Thus, the prisoners deployed the writ "only to the narrow remedy of release from detention. *Boumediene* did not concern immigration at all, it did not recognize habeas as a means of gaining entry to the United States, and it did not recognize aright to use habeas to obtain judicial review of final order of removal." *Id.* Consequently, the Court found *Boumediene* was inapplicable to Appellant's habeas claims. *Id.*

Here, Appellant attempts to distinguish himself from *Thuraissigiam*, accuses the District Court of failing to apply the two-step *Boumediene* test, and argues that

"habeas is appropriate where no alternate remedy exists." Br. 17. But none of these points demonstrate that this Court should reverse the lower court's holding.

First, Appellant says "*Thuraissigiam* is inapplicable due to key factual differences." Br. 17. But these "key factual differences" run up against the same section 1252(e)(2) roadblocks as the rest of Appellant's arguments. Here, Mr. Cordón Linarez insists that because Thuraissigiam crossed the border illegally, the expedited removal order that followed was proper. Br. 18. Appellant claims that parole rendered his entry lawful, which places him outside the holding of *Thuraissigiam*. Br. 18. This reasoning is wrong for two reasons.

First, habeas relief is an appropriate request when Appellant is detained, U.S. CONST. art. 1, § 9, cl. 2. and requesting "simple release" from that detention. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 118 (2020). Here, Appellant filed a habeas petition, was released from custody, and on November 13, 2024, he was removed to Guatemala. Br. 4. Therefore, whatever factual differences he may identify between himself and the petitioner in *Thuraissigiam* are irrelevant. The Supreme Court has squarely held that the Suspension Clause does not provide for any broader relief in this context. *Thuraissigiam*, 591 U.S. at 119 ("Claims so far outside the 'core' of habeas may not be pursued through habeas."); *Castro*, 835 F.3d at 451 (Hardman, J. concurring).

Second, asking this Court to determine whether the removal order was properly issued contravenes the jurisdictional limits imposed by section 1252(e)(2). The District Court correctly found as much. A-34-35. Contrary to Appellant's unfounded objection, the District Court *did deploy* the two-step *Boumediene* test: the first step being whether the Petitioner is prohibited from invoking Suspension Clause, not whether the expedited order was properly issued to him. A-35. In response, the District Court found that "[a]s in *Castro* and *Thuraissigiam*, the petitioner in this case, Cordón Linarez, 'cannot clear *Boumediene's* first hurdle— that of proving their entitlement *vel non* to the protections of the Suspension Clause.'" *Id.* (quoting *Castro*, 835 F.3d at 445) (emphasis in original). That is because, "[n]otwithstanding his physical presence within the United States for a period of years while serving his criminal sentence, as an immigration parolee, Cordón Linarez 'now stands, although physically well within the United States border, on the same legal footing as an immigrant at the door seeking admission to the United States.'" A-36 (quoting *Soto-Ramirez v. Ashcroft*, 228 F. Supp. 2d 566, 569–70 (M.D. Pa. 2002)).

Finally, Appellant argues that habeas relief is appropriate "where no alternate remedy exists." Br. 17. Not so, when Congress has expressly limited habeas relief, and when Appellant is no longer detained. *Castro*, 835 F.3d at 445. As this Court has acknowledged: "an alien seeking initial admission to the United States requests

a privilege and has no constitutional rights regarding his application." *Id.* (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)). Therefore, "since the issues that [Appellant] seek[s] to challenge all stem from the Executive's decision to remove them from the country, they cannot invoke the Constitution, including the Suspension Clause, in an effort to force judicial review beyond what Congress has already granted them." *Id.* at 445-46. So the Court need not reach the second question in the *Boumediene* framework. *Id.* For these reasons, the Court should decline to review Appellant's challenge under the Suspension Clause.

**b. The Equal Protection Clause Does Not Permit Judicial Review.**

Finally, Appellant's Equal Protection claim is an odd one, and also does not create the groundwork for judicial review. Appellant argues that because FSA time credits do not apply to inmates with removal orders, it "creates a disparity among inmates based on immigration status," and thus, "contravenes the Equal Protection Clause." Br. 22. As a preliminary matter, Appellant has waived this argument by failing to raise it in his objections to the Magistrate's Report and Recommendation. *Williams v. Nish*, 612 F. App'x. 81, 82 (3d Cir. 2015). For that reason alone, this Court should dispense with this claim.

Even if the Court declines to find that Linarez waived the claim, it still falls flat. Appellant has protested all along that his expedited removal order thwarted application of his FSA credits. In other words, the basis of this challenge raises the

question of whether his expedited removal order is valid. But Congress has spoken, through 8 U.S.C. §§ 1252(e), (g), that "no court" can review that question. So despite the way Appellant framed this claim, the District Court's opinion makes clear that it is outside the bounds of what Congress authorized for judicial review. A-16-38. Appellant's previous paroled status also renders him "an alien seeking initial admission to the United States [who] requests a privilege" and thus, "has no constitutional rights regarding his application." *Castro*, 835 F.3d at 445. For that reason, Appellant also lacks standing to bring this claim.

Aside from the fact that Appellant's claim is statutorily and constitutionally precluded from judicial review, he also fails to state a claim upon which relief can be granted. To plead an equal protection claim, Appellant must articulate that he was (1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class. *Oliveira v. Twp. of Irvington*, 41 F. App'x. 555, 559 (3d Cir. 2002). Importantly, to establish an equal protection claim, Appellant must "prove the existence of purposeful discrimination." *Eskridge v. Phila. Hous. Auth.*, 722 F. App'x. 296, 300 (3d. Cir. 2018). Finally, Fifth Amendment Equal Protection claims are identical to Fourteenth Amendment Equal Protection claims. *United States v. Lopez*, 650 F.3d 952, 960 (3d Cir. 2011).

First, Appellant does not allege he is part of a protected class, either as an inmate, or an inadmissible alien. *Plyler v. Doe*, 457 U.S. 202, 223 (1982) ("Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'"); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (stating inmates are not part of a suspect class) (collecting cases). Second, Appellant has failed to identify anyone in his pleadings that is similarly situated to him, and treated in an opposite way. Here, that would mean identifying another inadmissible alien inmate, with an expedited removal order, where the facility applied the FSA time credits, which resulted in early release. *Wyatt v. Jacquez*, No. 3:24-CV-00269-JE, 2024 WL 4453648, at *2 (D. Or. Aug. 14, 2024), *report and recommendation adopted*, No. 3:24-CV-00269-JE, 2024 WL 4453578, at *2 (D. Or. Oct. 8, 2024) (rejecting an equal protection claim, predicated on an inmate's illegibility for FSA time credits, because he did not identify anyone similarly situated to him). Finally, Appellant cannot explain that he was discriminated against because the "conduct" complained of—his ineligibility for FSA time credits due to his expedited removal order—was proscribed by Congress, and Appellant acknowledges he meets the exclusionary criteria. *See Jimenez v. Baker*, 135 Nev. 667 (Nev. App. 2019) (finding no equal protection claim predicated on an inmate's ineligibility to receive FSA time credits because, *inter alia*, the exclusion was mandated by law, and the inmate admits he

fits into the law's parameters.). Thus, Appellant's Equal Protection Claim is legally and factually unworkable, and the Court should dispose of it.

## CONCLUSION

Accordingly, the Court should affirm the District Court's order denying Linarez's petition for habeas corpus.

Dated: April 28, 2025

Respectfully submitted,

YAAKOV M. ROTH
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

BRIAN C. WARD
Acting Assistant Director

*/s/Caroline McGuire*
CAROLINE MCGUIRE
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
General Litigation and Appeals
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4268
Email: caroline.mcguire@usdoj.gov

## CERTIFICATION OF COMPLIANCE AND SERVICE

I hereby certify that the body of this response, including footnotes, contains 11,402 words, thereby satisfying the 13,000-word limit in Fed. R. App. P. 32(a)(7)(B).

I further certify that this response complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) by using Microsoft Word's Times New Roman 14-point font.

I further certify I am admitted to and have filing privileges with the United States Court of Appeals for the Third Circuit.

I further certify that on April 28, 2025, I caused a copy of this answering brief to be served, by the Notice of Docketing Activity generated by the Third Circuit's electronic filing system, on counsel of record.

Dated: April 28, 2025

<div align="right">

 s/ Caroline McGuire
CAROLINE MCGUIRE
Trial Attorney

</div>

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellees are federal government employees sued in their official capacities. As such, they are not required to file a corporate disclosure statement under Federal Rule of Appellate Procedure 26.1(a).

Dated: April 28, 2025

<u>*s/ Caroline McGuire*</u>
CAROLINE MCGUIRE
Trial Attorney

## STATEMENT REGARDING ORAL ARGUMENT

Appellees respectfully suggest—in addition to the presented facts and legal arguments in the briefs and the record before this Court—that the decisional process will be significantly aided by oral argument. Pursuant to L.A.R. 34.1(b), Appellees respectfully request fifteen minutes of time to complete oral argument.

Dated: April 28, 2025

<div align="right">

*s/ Caroline McGuire*
CAROLINE MCGUIRE
Trial Attorney

</div>

## ANTI-VIRUS CERTIFICATION

This is to certify that the foregoing Answering Brief is free of viruses.

Dated: April 28, 2025

<div style="margin-left:50%">

*s/ Caroline McGuire*
CAROLINE MCGUIRE
Trial Attorney

</div>